# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACK Y. DALOYA and KEREN ESAYEV, H/W**<br>2064 Atlantic Boulevard,<br>Atlantic Beach, NY 11509<br><br>          *Plaintiffs,*<br>     vs.<br><br>**CBK LODGE GENERAL PARTNER, LLC**<br>529 Camelback Road,<br>Tannersville, PA 18372<br><br>     and<br><br>**CBK LODGE, L.P.**<br>193 Resort Drive,<br>Tannersville, PA 18372<br><br>     and<br><br>**CAMELBACK RESORT, LLC**<br>193 Resort Drive,<br>Tannersville, PA 18372<br><br>     and<br><br>**CBH20, LP**<br>38 Swiftwater Avenue,<br>Pocono Manor, PA 18349<br><br>     and<br><br>**CBH20 General Partner, LLC**<br>301 Resort Drive<br>Tannersville, PA 18372<br><br>     and<br><br>**CAMELBACK LODGE and INDOOR WATERPARK**<br>193 Resort Drive,<br>Tannersville, PA 18372 | Civil Action No:_____<br><br>**PLAINTIFFS' COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

|  |  |
|---|---|
| **and** | : |
|  | : |
| **CAMELBACK LODGE** | : |
| 193 Resort Drive, | : |
| Tannersville, PA 18372 | : |
|  | : |
| **JOHN/JANE DOES I – V,** | : |
| **Lifeguards/Waterpark Attendants** | : |
|  | : |
| **JOHN/JANE DOES VI-X,** | : |
| **Managers/Supervisors/Trainers of** | : |
| **the Lifeguards/Waterpark** | : |
| **Attendants** | : |

*Defendants.*

# COMPLAINT

## I.   PARTIES

1. Plaintiffs Jack Y. Daloya and Keren Esayev, H/W are adult individuals who, at all relevant times, have maintained residency in the State of New York at the above-listed address.

2. Defendant, CBK Lodge, L.P. ("CBK Lodge L.P."), a Pennsylvania business entity, maintains the following business address: 193 Resort Dr., Tannersville, PA 18732.

3. Defendant, CBK Lodge General Partner, LLC ("CBK Lodge GP"), a Pennsylvania business entity, maintains the following business address: 529 Camelback Rd., Tannersville, PA 18372.

4. Defendant CBK Lodge GP, upon information and belief, is the general partner to Defendant CBK Lodge, L.P.

5. CBK Lodge, L.P., at all relevant times, owned and/or used the following fictitious names:

      i.      "Camelback Lodge and Indoor Waterpark," registered in Pennsylvania and addressed at 193 Resort Drive, Tannersville, PA 18372; and,

      ii.      "Camelback Lodge," registered in Pennsylvania and addressed at 193 Resort Drive, Tannersville, PA 18372.

6. Defendant CBH20, LP, which may be known or referred to as "CBH20, L.P." or by a similar reference (hereinafter "CBH20") is believed and averred to be a Pennsylvania business entity with a principal place of business located at 38 Swiftwater Avenue, Pocono Manor, PA 18349.

7. Upon information and belief, CBH20 is or has, at all times relevant hereto, been the registered owner of the fictitious name, "Camelback Mountain Resort."

8. Upon information and belief, defendant, CBH20 General Partner, LLC ("CBH20 GP") is a Pennsylvania business entity with a principal place of business located at 301 Resort Drive, Tannersville, PA 18372.

9. It is believed and averred that Defendant CBH20 GP is the general partner and/or joint venturer with Defendant CBH20 and/or with the other "Camelback Defendants" identified herein, and incorporated by reference.

10. It is believed and averred that the "Camelback Mountain Resort" is also known as "the Camelback Lodge & Indoor Waterpark."

11. Upon information and belief, at all times relevant hereto Defendants CBK Lodge, L.P., CBK Lodge GP, CBH20 GP, and CBH20 owned, possessed, managed, controlled and/or maintained the business operation and premises hereinafter referred to as the "Camelback Lodge & Indoor Waterpark."

12. Plaintiffs shall hereinafter collectively refer to the entities, fictitious names, and business operation(s), identified in Paragraphs Two through Twelve (¶¶ 2 – 12), as the "Camelback Defendants."

13. At all times relevant hereto, the Camelback Defendants acted by and through their employees, servants and/or agents, all of whom acted within the course and scope of their employment, for and on behalf of the Camelback Defendants.

14. Defendants John/Jane Doe (I-V), are adult individuals who are fictitiously designated as Plaintiffs are presently unaware of their true identities. At all times relevant hereto, Defendants John/Jane Doe I-V were lifeguards/waterpark attendants who were employees, agents and/or servants of the Camelback Defendants, for whose acts and omissions the Camelback Defendants are directly/vicariously responsible.

15. Defendants John/Jane Doe (VI-X) are adult individuals who are fictitiously designated as Plaintiffs are presently unaware of their true identities. At all times relevant hereto, Defendants John/Jane Doe were managers, supervisors and/or trainers of lifeguards/waterpark attendants at the Camelback Lodge Indoor Waterpark known as Aquatopia and employees, agents and/or servants of the Camelback Defendants, for whose acts and omissions the Camelback Defendants are directly/vicariously responsible.

## II. **JURISDICTION AND VENUE**

16. Jurisdiction is founded upon 28 U.S.C. § 1332.

17. Plaintiffs are residents of the State of New York.

18. Defendants are residents of the Commonwealth of Pennsylvania, where the corporate defendants have a principal place of business.

19. The amount in controversy is in excess of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

20. The alleged negligence occurred in the Middle District of Pennsylvania, where the Camelback Defendants regularly and continuously transact business, and therefore venue properly lies in the United States District Court for the Middle District of Pennsylvania.

### III. FACTUAL BACKGROUND

21. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

22. On or about July 4, 2018 to July 5, 2018, plaintiffs and their children were overnight hotel guests and business invitees of Camelback Lodge and the Camelback Defendants.

23. Access to the Aquatopia Indoor Waterpark operated by the Camelback Defendants is included for overnight hotel guests of Camelback Lodge, such as plaintiffs.

24. On July 5, 2018, the Daloya family visited the Indoor Waterpark known as Aquatopia operated by the Camelback Defendants, hoping to enjoy the amusements it offered.

25. On or about July 5, 2018, Mr. Daloya went on a ride known as "The Flowrider."

26. The Flowrider is a simulated wave machine which pumps a powerful and unyielding stream of water over a composite membrane riding surface.

27. The wave action created by the Flowrider allows users to simulate either boogie boarding (riding a wave while lying down on a board) or surfing (riding a wave while standing on a board).

28. The Flowrider's operator/lifeguard provides each rider-participant with a customized board on which to lie or stand.

29. Upon information and belief, the Flowrider's operations and procedures manual advises and instructs the owner and/or operator of a Flowrider that it is the operator's responsibility to advise users of the ride's risks and take appropriate steps to minimize those risks.

30. Upon information and belief, the Flowrider's operations and procedures manual informs the operator of a Flowrider that a participant using the Flowrider to boogie-board/body board should be instructed to place the board into the flow of the water, lie down on the board on his/her stomach, head facing the flow of water, and gently push out into the flow, making a gentle entry into the flow.

31. Upon information and belief, the Camelback Defendants, their employees, servants and/or agents negligently, recklessly and/or with gross negligence trained, instructed and/or permitted the waterpark attendant/lifeguard operating and/or managing the subject Flowrider at the Indoor Waterpark when Mr. Daloya rode it on or about July 5, 2018 to instruct and allow participants, such as Mr. Daloya, who were boogie boarding/body boarding on the ride to leap and/or jump into the ride's wave-pool with the board.

32. Defendants, their employees, servants and/or agents at no time warned Mr. Daloya of the danger of jumping and/or leaping into the wave pool with the board.

33. Defendants at no point obtained a waiver or release from Plaintiffs to enter the Flowrider.

34. Rather than instruct Mr. Daloya to place the board into the flow, lie down on his stomach and gently push into the flow, the waterpark attendant/lifeguard

6

negligently, recklessly and/or with gross negligence instructed Mr. Daloya to leap and/or jump into the wave pool with the body board, thus creating an unreasonable and unnecessary risk of harm to Mr. Daloya.

35. Mr. Daloya informed the waterpark attendant/lifeguard this was his first time on the Flowrider and otherwise acted in a reasonable and prudent manner, was in no manner negligent and in no manner caused or contributed to the happening of the accident.

36. Despite being told this was Mr. Daloya's first time on the Flowrider and knowing and/or having reason to know a participant should be instructed to place the board into the flow of the water, lie down on the board on his/her stomach, head facing the flow of water, and gently push out into the flow, the waterpark attendant/lifeguard nonetheless *still* negligently, recklessly and/or with gross negligence told Mr. Daloya to leap and/or jump into the wave pool with the board and that it was easy.

37. Relying upon the instruction and assurance of the waterpark attendant/lifeguard, Mr. Daloya jumped into the wave pool with the board, as instructed.

38. Upon impact, Mr. Daloya felt and heard a "rip" in his left pectoral muscle and felt a rush of unrelenting, excruciating pain.

39. During this incident, and as a result of the same, Mr. Daloya sustained devastating and life-altering injuries.

40. As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, and other liability-producing conduct of the Camelback Defendants, Plaintiff Jack Y. Daloya suffered serious, severe, permanent, and disabling injuries, including but not limited to a ruptured left pectoralis muscle, injuries to his

muscles, ligaments, tendons and nerves, mental and emotional anguish, depression, despair, chronic pain, and other injuries, the full extent of which are not yet known, and some or all of which may be permanent in nature.

41. As a direct and proximate result of the Camelback Defendants' conduct, Plaintiff Jack Y. Daloya has required, continues to require, and will in the future require, medical treatment and care, and, has in the past, continues presently, and may in the future incur the cost of medicines, medical care, hospitalizations, treatment, operations, testing and rehabilitation in an attempt to alleviate and/or cure his condition.

42. As a direct and proximate result of the Camelback Defendant's conduct, Plaintiff Jack Y. Daloya has suffered, and continues to suffer, *inter alia,* severe pain and suffering, scarring, disfigurement, deterioration and loss of muscle, sleep loss, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, and other intangible losses.

43. As a direct and proximate result of the Camelback Defendant's conduct, Plaintiff Jack Y. Daloya has been prevented and will be prevented in the future from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings and a loss of earning capacity.

**COUNT I – NEGLIGENCE**
**Plaintiff Jack Y. Daloya v. All Defendants**

44. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth hereinafter.

45. At all times relevant hereto, the Defendants were responsible for the hiring, training, supervision and oversight of their agents, servants and employees who

were involved in the use, supervision, control and operation of the Flowrider on or about July 5, 2018.

46. At all times relevant hereto, Defendants were responsible to ensure that their agents, servants and employees involved in the use, supervision, control and operation of the Flowrider were properly hired, trained, experienced and supervised in the safe and proper use, supervision, control and operation of the Flowrider.

47. At all times relevant hereto, Defendants were responsible for the safety of their guests and business invitees who use and/or rode the Flowrider and had a non-delegable duty to operate the rides in a safe manner for their business invitees, such as Plaintiff Jack Daloya.

48. The Camelback Defendants were responsible for having competent and properly trained staff provide instruction to their lifeguards, waterpark attendants and all business invitees on the safe and proper use of rides, including the Flowrider.

49. Mr. Daloya and his family were business invitees, to whom the Defendants owed the highest duty of care.

50. Upon information and belief, Plaintiffs' injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendants individually and/or through their agents, servants, workers and/or employees, which included the following:

  i. Failing to warn Plaintiff, Jack Y. Daloya, of the dangers presented by entering and riding the Flowrider;

  ii. Failing to warn Plaintiff of the dangers presented by jumping and/or leaping into the wave pool with a board;

iii. Permitting Plaintiff to enter and ride the Flowrider when he was not adequately trained to do so;

iv. Having inadequate employees supervising the patrons using the Flowrider;

v. Failing to properly train their agents, servants and/or employees on safe and proper means of entering the Flowrider wave pool;

vi. Failing to instruct users of the Flowrider on safe and proper means of entering the Flowrider wave pool and avoiding injury on the Flowrider;

vii. Failing to prevent unsafe practices and instructions by their operators/lifeguards and to rescue Plaintiff from harm;

viii. Acts constituting negligence per se;

ix. Falling below the industry standard of care with respect to hiring and training employees and posting appropriate warnings and instructions;

x. Failing to adopt, implement and follow appropriate policies and procedures regarding safety to ensure that Defendants and their agents, servants and/or employees were properly trained and supervised in the safe operation, use, control and supervision of the Flowrider;

xi. Failing to hire agents, servants and/or employees with the necessary skills, expertise and judgment to supervise guests and business invitees, including Plaintiff, using the Flowrider;

xii. Failing to adequately supervise their waterpark attendants, operators and lifeguards;

xiii. Failing to adequately supervise those persons attempting to use the Flowrider, including Plaintiff;

xiv. Failing to adhere to the Flowrider's policies, procedures and manuals;

xv. Failing to have adequate protocols and procedures for the safe use of rides such as the Flowrider;

xvi. Failing to warn of the dangers posed by the Flowrider, including the risks associated with jumping and/or leaping into the wave pool with a board;

xvii. Failing to ensure that the Flowrider had sufficient water depth so as to cushion any falls and/or entries into the Flowrider;

xviii. Failing to follow the recommendations of Flowrider's manufacturer regarding safety and the control, operation, use and supervision of the Flowrider;

xix. Violating defendants' internal safety policies;

xx. Failing to properly conform with industry safety standards and/or applicable regulations and/or statutes;

xxi. Failing to use due care under the circumstances.

51. As a result of the Defendants' careless, negligent, grossly negligent, reckless and outrageous conduct, Plaintiff, Jack Y. Daloya, was legally and proximately caused to sustain painful, permanent, life-altering injuries and damages, the details of which are more fully set forth in the preceding paragraphs of this Complaint.

**WHEREFORE**, Plaintiffs demand damages of all defendants in an amount substantially in excess of the jurisdictional limit, exclusive of interest and costs, punitive damages, prejudgment and post-judgment interest, delay damages, costs and such other relief as this Honorable Court deems reasonable and appropriate.

## COUNT II – LOSS OF CONSORTIUM
### Plaintiff Keren Esayev v. All Defendants

52. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth hereinafter.

53. At all relevant times, Plaintiff, Jack Y. Daloya, was the lawfully wedded husband of wife-Plaintiff, Keren Esayev.

54. As a result of the injuries sustained by husband-Plaintiff, Jack Y. Daloya, wife-Plaintiff, Keren Esayev, has been and will continue to be deprived of the love, assistance, companionship, consortium, and society of her husband, Plaintiff, Jack Y. Daloya, all to her great loss and detriment.

**WHEREFORE,** Plaintiffs demand damages of all defendants in an amount in excess of $75,000, exclusive of interest and costs, punitive damages, prejudgment and post-judgment interest, delay damages and costs and such other and further relief as this Honorable Court deems reasonable and appropriate.

### NOTICE OF PRESERVATION OF EVIDENCE

PLAINTIFFS HEREBY DEMAND AND REQUEST THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS, ANY DOCUMENTS DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR ALLEGATIONS OF THIS COMPLAINT.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial.

                    **THE BEASLEY FIRM, LLC**

                    **BY:**    /s/Barbara R. Axelrod
                              Barbara R. Axelrod, Esq.
                              PA 25507
                              Peter J. Johnsen, Esq.
                              PA 321282
                              1125 Walnut Street
                              Philadelphia, PA 19107.4997
                              Tel: (215) 931-2639
                              Fax: (215) 592-8360
                              Barbara.axelrod@beasleyfirm.com
March 12, 2019                  Peter.Johnsen@beasleyfirm.com